IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTRELL TEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-995-RJD |
| | ) | |
| R. SMITH and SGT. SHUBERG, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

Plaintiff Antrell Teen, a former inmate at the St. Clair County Jail ("the Jail"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff proceeds in this case on the following claim:

> **Count 8:** First Amendment retaliation claim against Smith for bringing a false disciplinary charge on January 26, 2018, and against Strubberg [1] for refusing to investigate the false charge and imposing excessive discipline after Plaintiff sued Smith.

Defendants Smith and Strubberg filed a Motion for Summary Judgment (Doc. 31) arguing the record is devoid of any circumstantial or direct evidence of a retaliatory motive, that the actions taken by Jail officials were for legitimate governmental objectives, and that the claimed deprivations were not of such magnitude as to deter a person of ordinary firmness from exercising their rights. Plaintiff filed a Response (Doc. 34) arguing he was improperly disciplined by Defendants because he filed numerous Captain's complaints and lawsuits regarding his treatment at the Jail.

---

[1] The Clerk of Court is DIRECTED to correct the docket to reflect the correct spelling of Defendant Shuberg to Steven Strubberg.

## FACTUAL BACKGROUND

Plaintiff was incarcerated at the St. Clair County Jail beginning on December 15, 2015 (Doc. 31-2). On January 26, 2018, Officer Michael Ripperda was dispatched to AB Block regarding a complaint by inmate Byron Hudson (Doc. 31-3, Officer Rippera's Incident Report). Hudson reported that another inmate, J.B., had walked into his cell and took his commissary and that the two were on Keep Separate status (Id.). Ripperda went to the cell of J.B. and was met there by CO Rick Smith (Id.). Ripperda and Smith found a small bag of commissary with a receipt belonging to Hudson in the cell (Id.). Smith took the bag of commissary to Hudson and Hudson pointed out what he was missing (Id.).

Officer Smith's Incident Report states that during the theft investigation, Smith stepped into Hudson's cell and discovered Detainee Antrell Teen talking to Hudson (Doc. 31-4). Smith overheard Plaintiff say, "You don't have to do that" and believed Plaintiff was attempting to convince Hudson not to talk with responding officers (Id.). Plaintiff agreed that he was talking with Hudson when Officer Smith entered the cell and recalls that he had been telling Hudson that he should want to stay on the block (Doc. 31-1 at 5-7, Plaintiff's Deposition). According to Plaintiff, he told Hudson, "[w]e have a good system going on in AB Block," "that he shouldn't feel threatened by the guys who took his belongings," and "[d]on't worry about it, I'll get your stuff back for you" (Id. at 6). Plaintiff testified that his statement "You don't have to do that," meant Hudson did not have to leave the cell block (Id. at 7).

Smith and Hudson engaged in conversation regarding the theft investigation (Doc. 31-1 at 8). Smith reported he observed an unidentified detainee hand Hudson's commissary receipt to Plaintiff, and Plaintiff placed it behind his back as if to conceal it (Doc. 31-4). Smith requested Plaintiff hand him the receipt (Id.). Rather than immediately turning over the paper, Plaintiff read

the receipt (Id.). Smith questioned Plaintiff's involvement in the investigation that required him to read the receipt (Id.). After approximately 45 seconds, Plaintiff handed the paper to Officer Smith, stating he had his own investigation he needed to complete, and a job to do in his block (Id.). Smith informed Plaintiff that he was actually in charge of handling issues in the facility and Plaintiff called Smith a "bitch ass security guard" (Id.). Smith then left to assist Ripperda in escorting the theft suspect out of the block and advised Plaintiff he would return to finish their talk (Id.). Plaintiff responded, "You can find me in Cell Number 6" (Doc. 31-1 at 14).

Plaintiff testified inmate Steve Tiller did hand him Hudson's commissary receipt, but he disputes that he attempted to hide it from anyone (Doc. 31-1 at 8). Plaintiff testified that Smith requested he hand him the receipt, but Plaintiff took the time to read the receipt so that he would know what items were missing in order to get them back for Hudson (Id. at 9). It took him "maybe 60 seconds" to read the receipt before he turned it over (Id. at 10). Plaintiff testified there was no further conversation between him and Smith after he handed him the receipt and that he did not use the "bitch-ass" language (Id. at 12). Plaintiff testified he could have called him a security guard at one point during the incident (Id.). Plaintiff testified he did hear someone call Smith a "bitch-ass security guard" when Smith was walking away, but he does not know who said it (Id. at 13). Shortly after Smith left the block, Plaintiff obtained and returned the commissary items to Hudson (Id. at 14).

After removing the alleged suspect from the block, Smith returned to AB block, along with Lt. Pannier and Officer Ripperda, and requested Plaintiff exit the block for questioning (Doc. 31-4). Plaintiff stated he had no memory of the conversation and if he made any disrespectful comments, it was only in response to disrespect from Smith (Id.). Plaintiff was moved to Recovery 1 pending a housing review (Id.). Plaintiff was cited for disrespectful comments (B27)

and interfering with the investigation (B24) and a privileges review was requested (Id., Doc. 31-6).

On January 29, 2018, the Disciplinary and Adjustment Committee interview was held for the B24 and B27 citations issued on January 26, 2018 (Doc. 31-6 at 2). Sgt. Strubberg went to Plaintiff's cell, identified himself, stated the purpose of the interview, and explained to Plaintiff that it was his opportunity to explain his side of the story (Doc. 31-1 at 21). Plaintiff testified the interview took place through the door of his cell and he remained "stretched out on the mat" during the interview (Id. at 22). Chairman Strubberg and Member Walter signed the committee hearing report (Id.). Officer's Strubberg's narrative states:

> Detainee Teen stated, "His (Officer Smith) actions were retaliatory in nature, I did not interfere with his duties. He's just mad because I wrote him up. If I would have called him a name, it would have been something more creative than that. I have a degree in verbal linguistics; I wouldn't resort to calling someone a bitch. I don't remember what I said to him, but it wasn't that."

(Id. at 3). To the question of whether the detainee requested witnesses, the report indicated "No" (Id. at 2). Plaintiff disputes this and testifies that he requested Strubberg speak to the witnesses that heard the conversation between him and Smith (Doc. 31-1 at 21). Plaintiff testified he provided at least three names of inmates Strubberg could interview (Id.). Plaintiff also disputes he received advanced notice of the hearing (Id.). Plaintiff was found guilty of both violations and lost partial privileges of commissary and recreation for 20 days (Doc. 31-6).

Plaintiff was reassigned to L Block, a non-segregation block (Doc. 31-1 at 23). Plaintiff testified that L Block is a smaller block and more confined (Id.). L block had only one kiosk, fewer tables, less desk space, and more violent inmates (Id.). Plaintiff was housed in L block from January 29, 2018 until March 15, 2018. Lt. Strubberg attested Plaintiff was moved from the AB block where the incident of January 26, 2018 occurred as a security and preventive measure

and not as part of the discipline for the citation (Doc. 31-7 at 2).

Plaintiff testified the disciplinary charges were retaliatory in nature because they were filed around the same time he was complaining through Captain's complaints and lawsuits about the conditions of confinement (Doc. 31-1 at 17). Plaintiff testified that none of the correctional staff defendants in this case ever made any comments about the legal matters going on, but he had a large capacity of legal mail coming in and often asked about going to the law library (Id.). One of the lawsuits involved a boil water order and named Officer Smith as part of those complaints (Id. at 4, 19). The *pro se* Complaint filed by Plaintiff regarding the boil order issue was dismissed at merits review and Officer Smith was never served or issued a waiver of service (SDIL 17-cv-916, Doc. 8). Smith attested he had no knowledge of Plaintiff having filed a lawsuit against him for the boil order issue prior to this present litigation (Doc. 31-5).

Since the incident of January 26, 2018, Plaintiff has continued to file lawsuits against St. Clair County Jail staff before this Court (See SDIL 18-cv-568; 18-cv-991; 18-cv-992; 18-cv-993; 18-cv-994; 18-cv-995; 18-cv-996; 18-cv-997; 18-cv-1262; 18-cv-1473). Plaintiff has also named St. Clair County Jail officials as defendants in numerous actions in the Circuit Court of St. Clair County (See 18-L-497; 18-L-702; 18-L-703; 18-L-705).

**LEGAL STANDARD**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is

made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

It is well settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). In order for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, the plaintiff must produce evidence that his speech was at least a motivating factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.* On the other hand, an inmate who has evidence

that officials were motivated to discipline the prisoner because of protected speech cannot prevail if the officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason. *Greene v. Doruff,* 660 F.3d 975, 978 (7th Cir.2011).

## DISCUSSION

There is no dispute that Plaintiff's right to file Captain's complaints and lawsuits is protected speech under the First Amendment. The alleged deprivations Plaintiff suffered were there transfer to L block and the discipline received for the January 26, 2018 citation which consisted of 20-day recreation and commissary restrictions. While recreation and commissary restrictions may not be actionable in and of themselves, if the restrictions were placed in retaliation for the exercise of constitutionally protected speech, then they could be actionable. Plaintiff's being re-housed in L block, however, is not actionable. L block was not a segregation block and an inmate has no constitutional right to be housed in a particular cell block nearly identical to other cell blocks. Plaintiff was not moved to L block as a disciplinary measure, rather he was moved as an administrative and security measure after the January 26, 2018 incident.

Plaintiff's evidence that the recreation and commissary restrictions were motivated by his filing complaints and lawsuits against Smith is based solely on his belief that correctional staff were aware of his lawsuits due to his large volume of legal mail and time spent at the law library. Defendants Smith and Strubberg contend Plaintiff received the 20-day restrictions as discipline for the citations of disrespectful conduct and interference with an investigation. Additionally, Defendant Smith contends he was not aware he had previously been named in a lawsuit by Plaintiff because he was dismissed from the suit prior to being served.

Plaintiff offers little evidence to support his claim that the discipline he received was motivated by retaliation, other than the discipline occurred in January 2018, five months after

Plaintiff filed a lawsuit naming Smith in August 2017. The Seventh Circuit has made clear, a plaintiff's reliance on suspicious timing to establish a prima facie retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). Plaintiff admitted he did not immediately comply with the order of Officer Smith when asked to hand over the commissary receipt, rather he waited approximately 60 seconds. Plaintiff was issued citations for disrespectful conduct and interference with an investigation because of his refusal to follow Smith's orders during the theft investigation.

Further, the 20-day commissary and recreation restrictions were not an unreasonable discipline for the disrespectful conduct and interreference with an investigation charges of which Plaintiff was found guilty. Moreover, the restrictions were not such that they were likely to deter First Amendment activity in the future. Courts have found similar temporary deprivations of privileges are insufficient to support an assertion that the actions would deter a person of ordinary firmness from exercising their rights. See *Kervin v. Superintendent*, 2014 WL 3384664, at 3 (N.D. Ind. July 9, 2014) (lost telephone and commissary privileges for a period of 30 days insufficient to support a claim of retaliation). In fact, Plaintiff was not deterred by the 20-day restrictions, as he continued to exercise his First Amendment right by filing numerous Captain's complaints and no less than 14 lawsuits after January 29, 2018. The record shows that the discipline imposed for disrespectful conduct and interference with an investigation was taken for legitimate penological and security purposes and would have occurred notwithstanding any retaliatory motive. As such, Defendants are entitled to summary judgment on Plaintiff's claim of

retaliation.[2]

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED**. Judgment shall be entered in favor of Defendants Smith and Strubberg and against Plaintiff. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED: January 6, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**

---

[2] Plaintiff raises due process issues regarding notice of the January 29, 2018 disciplinary hearing and his ability to call witnesses for the first time in his Response (Doc. 34). At screening, see 28 U.S.C. § 1915A, the district court allowed Plaintiff to proceed on his First Amendment retaliation claims but dismissed without prejudice "any intended claim not recognized by the court." As such, the Court will not address any due process claim.